UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OCLARO, INC. DERIVATIVE LITIGATION.  _____/ | Lead Case No. C-11-3176 EMC  **ORDER DENYING AGUILAR'S MOTION TO CONSOLIDATE; GRANTING J&W'S MOTION FOR APPOINTMENT AS LEAD COUNSEL; AND DENYING L&K'S MOTION FOR APPOINTMENT AS LEAD COUNSEL**  **(Docket Nos. 9, 10)** |

This Court is presiding over a securities fraud class action related to a company by the name of Oclaro, Inc. as well as several shareholder derivative actions based on largely the same underlying facts. Currently pending before the Court are motions in the shareholder derivation actions – more specifically, (1) a motion to consolidate and (2) two competing motions for appointment as lead counsel. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to consolidate, **GRANTS** the motion to appoint Johnson & Weaver ("J&W") lead counsel, and **DENIES** the motion to appoint Levi & Korsinsky ("L&K") and Finkelstein Thomas ("FT") lead counsel.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The Oclaro securities class action was filed on May 19, 2011. *See Westley v. Oclaro, Inc.*, No. C-11-2448 EMC (Docket No. 1) (complaint). Approximately a month later, on June 27, 2011, Matteo Guindani, who is represented by J&W, filed the first shareholder derivative action. *See Guidani v. Couder*, No. C-11-3176 EMC (Docket No. 1) (complaint). Subsequently, the following shareholder derivative actions were filed: (1) on June 28, 2011, *Coney v. Couder*, No. C-11-3214

1  EMC, in which the plaintiff is represented by the Pacific Coast Law Group; (2) on July 7, 2011,
2  *Braman v. Couillaud*, No. C-11-3322 EMC, in which the plaintiff is represented by L&K; and (3) on
3  July 26, 2011, *Aguilar v. Couillaud*, No. C-11-3668 EMC, in which the plaintiff is represented by
4  FT.

5  All of the lawsuits above have been related (including the securities class action). In
6  addition, three of the four shareholder derivative suits have been consolidated – *i.e.*, the *Guindani*,
7  *Coney*, and *Braman* actions. Only the *Aguilar* case has not been consolidated. Mr. Aguilar now
8  seeks to have his case consolidated with the other shareholder derivative actions. In addition, the
9  plaintiffs in the shareholder derivative actions have filed competing motions for appointment of lead
10 counsel. The competing law firms are (1) J&W and (2) L&K/FT (as co-lead counsel). Pacific Coast
11 supports J&W's motion.

## II. DISCUSSION

### A. Motion to Consolidate

The Court addresses first Mr. Aguilar's motion to consolidate. As a preliminary matter, the Court notes that, on its face, Mr. Aguilar's complaint refers not only to a shareholder derivative action but also to a "Class Action." At the hearing, his counsel – FT – clarified that the intent was to bring only a shareholder derivative suit, with one of the claims being a federal securities claim (*i.e.*, §§ 10(b) and 21D of the Securities Exchange Act and Rule 10b-5). FT also affirmed that, because of the federal securities claim, the basis for subject matter jurisdiction over the complaint was federal question jurisdiction. FT disavowed any reliance on diversity jurisdiction (in contrast to the other shareholder derivative suits).

The problem for Mr. Aguilar is that the viability of his federal securities claim is, at least at this juncture, questionable. Even assuming that a shareholder may bring, *e.g.*, a § 10(b)/Rule 10b-5 claim as part of a derivative action, *see Frankel v. Slotkin*, 984 F.2d 1328, 1333 (2d Cir. 1993) (noting that stockholders of a company may bring a derivative action for damages to the corporation suffered by reason of a violation of § 10(b) and Rule 10b-5); *Herpich v. Wallace*, 430 F.2d 792, 803 (5th Cir. 1970) (stating that "[t]he private right of action implied under Rule 10b-5 may be invoked on behalf of a corporation in a shareholder's derivative suit"), an issue yet to be addressed by the

2

1 Ninth Circuit, he has not alleged the purchase or sale of any shares, either by Oclaro or even himself
2 during the Class Period. *See* Aguilar Compl. ¶ 82 (simply alleging that "Class members acquired
3 Oclaro securities during the Class Period at artificially high prices and were damaged").
4     Because Mr. Aguilar claims subject matter jurisdiction based on federal question jurisdiction
5 alone, and there appear to be insufficient allegations supporting the federal securities claim, then this
6 Court would appear to have no subject matter jurisdiction over his case. In this circumstance, the
7 propriety of consolidation of his case with the other shareholder derivative lawsuits is questionable.
8 J&W argued at the hearing that consolidation would destroy diversity jurisdiction, and L&K/FT did
9 not dispute such. Indeed, L&K/FT effectively conceded that it would, stating that they would
10 substitute a new plaintiff in the place of Mr. Aguilar.
11     In light of L&K/FT's effective concession, the Court shall, at least at this juncture in the
12 proceedings, deny without prejudice Mr. Aguilar's motion to consolidate his case with the other
13 shareholder derivative actions.

14 B.    <u>Competing Motions for Appointment as Lead Counsel</u>

15     Because the Court is not consolidating the *Aguilar* case, FT (Mr. Aguilar's counsel) cannot
16 be considered a candidate for the position of lead counsel. Therefore, the Court shall construe the
17 motion for appointment of L&K/FT as co-lead counsel to be a motion for appointment of L&K as
18 lead counsel alone. Competing against this motion is the motion for appointment of J&W as lead
19 counsel.
20     With respect to appointment of lead counsel, the Ninth Circuit has held that a court has the
21 inherent power to consolidate actions and appoint lead counsel to supervise and coordinate
22 prosecution of a case. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774 (9th Cir. 1977)
23 (agreeing with the Second Circuit that "'[t]he benefits achieved by consolidation and the
24 appointment of general counsel, i.e. elimination of duplication and repetition and in effect the
25 creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will
26 be channeled, will most certainly redound to the benefit of all parties to the litigation"). In this case,
27 as indicated in the hearing herein, the Court is concerned with the accrual of needless and excessive
28 attorney fees in the derivative actions which are likely to follow the class action securities suit.

Factors that courts typically consider in lead counsel determinations include: (1) the quality of the pleadings, (2) the vigorousness of the prosecution of the lawsuits, (3) the capabilities of counsel, including their experience and prior success record, and whether counsel's charges are reasonable, and (4) whether one complaint is simply a "copycat action" of another. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, No. C 11-2369 SI, 2011 U.S. Dist. LEXIS 86421, at *9-10 (N.D. Cal. Aug. 3, 2011); *Resnik v. Woertz*, Nos. 10-527-GMS, 10-603-GMS, 2011 U.S. Dist. LEXIS 31868, at *15 (D. Del. Mar. 28, 2011); *Sexton ex rel. Jones Soda Co. v. Van Stolk*, Nos. C07–1782RSL, C08–0018RSL, 2008 WL 1733242, at *1 (W.D. Wash. Apr. 10, 2008).

Most of these factors are neutral. For example, the quality of J&W's complaint and L&K's complaint are roughly on par with one another. The Court finds that J&W's complaint is a bit more detailed, but is not markedly superior. For example, J&W has not pointed to any authority establishing that a failure to make a jury request in compliance with Civil Local Rules results in a waiver, particularly when the party includes a demand for a jury on the caption page. J&W points out that its complaint has additional allegations about demand futility that L&K's complaint does not. While this is true, L&K's complaint contains more than sufficient allegations regarding demand futility – indeed, contains the critical allegations regarding demand futility (*i.e.*, the individual officers have no incentive to expose their own misconduct). Finally, although J&W's complaint has allegations about the individual officers' incentive compensation and L&K's complaint does not, it is not clear whether those allegations are material to the lawsuit, at least as pled. For example, J&W does not allege that Oclaro's officers made misleading statements in order to bolster Oclaro's stocks or profits which would affect their incentive compensation.

As for the capabilities of counsel, this factor is a close call. Both J&W and L&K have demonstrated that they are qualified and experienced and are capable of acting as lead counsel. Contrary to what J&W asserts, there is evidence indicating that L&K have sufficient experience as lead or co-lead counsel in shareholder derivative actions. Furthermore, L&K's experience in securities actions generally translates sufficiently into a shareholder derivative case such as this where fraud is involved. However, the Court is favorably impressed by J&W's presentation and knowledge.

4

United States District Court
For the Northern District of California

As for the assertion that L&K's complaint is merely a "copycat," it too is effectively neutral; it appears that both J&W and L&K tracked the complaint filed in the Oclaro securities class action.

To the extent L&K argues that firm resources is another factor that should be taken into account, again, the Court finds this factor largely neutral. While L&K may be a bigger law firm, the Court does not expect that all of the firm's lawyers would be working on this litigation. L&K admitted as much at the hearing. Moreover, having many lawyers working on the matter would run counter to the Court's directive to the plaintiff's attorneys in the shareholder derivative actions that it does not want fees and costs to be run up in the actions (*i.e.*, no fee churning) because the cases are essentially "piggyback" actions to the Oclaro securities class action as noted above. L&K points out that it can help reduce costs because it has access to an in-house expert. While L&K's having such access would potentially be useful, that fact ultimately does not weigh much in the calculus given that (1) the shareholder derivative actions will largely be riding on the coattails of the Oclaro securities class action and (2) J&W's experience litigating shareholder derivative actions gives it a certain amount of pre-existing expertise.

The remaining factor that weighs slightly in favor of one firm over another is the factor of vigorousness of prosecution. Here, the evidence of record indicates that J&W has done more than L&K. J&W's complaint was the first-filed derivative action, and J&W appears to have taken the lead in relating and consolidating the various derivative suits. The Court acknowledges that these cases are at their inception and thus J&W has not done substantially more than L&K. Nevertheless, at this point in the proceedings, J&W has done more – even if only marginally more – to move the lawsuits forward.

Taking into account the above factors, the Court finds that appointment of J&W as lead counsel is appropriate. The Court notes that it also has considered the possibility of appointing J&W and L&K as co-lead counsel. However, this approach is not advisable because it could well drive up fees and costs as a result of duplication and thus defeat the purpose of appointing lead counsel in the first place. The Court takes this opportunity to reiterate that it expects fees and costs in the shareholder derivative suits to be well maintained within reasonable bounds. Furthermore, the Court advises J&W that, should a fee motion ultimately be filed, that motion will not be rubber

5

stamped but rather will be rigorously scrutinized, both in terms of the number of hours and the reasonable hourly rates. Billing judgment in cases such as these, which are tag-alongs to the securities class action, must be employed. Further, the Court expects that if reasonably required work expands beyond the regular capabilities of J&W, J&W will allocate work to L&K.

### III. CONCLUSION

For the foregoing reasons, Mr. Aguilar's motion to consolidate is denied, J&W's motion for appointment as lead counsel is granted, and L&K's motion for appointment as lead counsel is denied.

This order disposes of Docket Nos. 9 and 10.

IT IS SO ORDERED.

Dated: September 14, 2011

EDWARD M. CHEN
United States District Judge