UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OCLARO, INC. DERIVATIVE LITIGATION. | Lead Case No. C-11-3176 EMC |
| _____/ | **ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL AND AWARDING FEES & EXPENSES**<br><br>**(Docket No. 83)** |

      Multiple shareholder derivative suits were filed in federal and state court following the filing of the complaint in the related securities class action captioned *Westley v. Oclaro*, *Inc.* (Case No. 11-2448) (the "Securities Class Action"). The three federal derivative actions were related and consolidated as *In Re Oclaro, Inc. Derivative Litigation* ("Federal Action"). Johnson & Weaver was appointed lead counsel for the Federal Action. Docket No. 23. At the time of Johnson & Weaver's appointment, the Court issued a directive that it "does not want fees and costs to be run up in the actions . . . because the cases are essentially 'piggyback' actions to the Oclaro securities class action" and cautioned Federal Action counsel that a fee motion "will not be rubber stamped but rather will be rigorously scrutinized." *Id.* at 5-6. A state action captioned *Moskal v. Couder et al.* (Case No. 1-11-CV-202880 "State Action") was filed in Santa Clara Superior Court with Robbins Arroyo LLP serving as lead counsel. In November of 2011 the parties in the Federal and State Actions (collectively "Derivative Actions") conferred and agreed to stay both actions during resolution of the motions to dismiss in the Securities Class Action. Approximately two years later, counsel in the Federal and State Actions ("Derivative Counsel") re-engaged for purposes of settlement. Derivative Counsel attended a one-day mediation with Judge Layn Phillips and engaged

in follow-up negotiations over a period of approximately five months beginning in September of 2013. In February of 2014 the parties finalized a settlement agreement. Oclaro's consideration for settlement is non-monetary and consists of four corporate governance measures. *See* Docket No. 70 at 11-12. The Court granted preliminary approval of settlement on May 5, 2014. Docket No. 81 ("Preliminary Approval Order").

Pending before the Court is Derivative Counsel's motion for final approval of settlement and request for fee award. Docket No. 83 ("Motion"). Derivative Counsel seeks a total award of attorney's fees in the amount of $250,000. Approval of the fairness and adequacy of the settlement does not require that the Court grant the attorney's fee request. Preliminary Approval Order at ¶¶ 10-11. The Court's approval of the settlement is discussed briefly herein and is memorialized in the accompanying order. As explained *infra*, the Court grants attorney's fees in the amount of $150,000.

## I. DISCUSSION

### A. Adequacy of the Settlement

A district court balances multiple factors when determining the reasonableness of a settlement proposal, such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000). A "principal factor to consider" is the benefit to Oclaro, on whose behalf the derivative suit was brought, "as compared to the risks posed by derivative litigation." *In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008 WL 4820784 at *2 (N.D. Cal. Nov. 5, 2008). Here, the benefits achieved were relatively modest. The four corporate governance measures adopted in the settlement agreement are as follows:

> 1. The positions of Chief Executive Officer and Board Chairman will be held by different persons for a period of at least two years after the Effective Date. If, during that two year period, the Board Chairman is not an Independent Director (as determined by the Board, and applying the definition of

1. Independent Director set forth by NASDAQ), an independent director shall serve as Lead Independent Director.

2. For at least two years after the Effective Date, no member of the Board of Directors shall serve as a director on more than five for profit, public company Boards.

3. For at least two years after the Effective Date, Oclaro shall continue to adhere to and comply with NASDAQ requirements regarding the Board's independence.

4. For at least two years after the Effective Date, the Audit Committee shall meet a minimum of four times annually. Such meetings may be held in person or by video- or teleconference as the Audit Committee shall deem appropriate.

Docket No. 70 at 11-12. As discussed in greater detail below, these measures are exceedingly modest.

On the other hand, as discussed in the Motion, the derivative plaintiffs faced a number of risks of proceeding with litigation. Motion at 13-16. For example, in the Securities Class Action, prospects of prevailing became more remote after a number of core claims were dismissed with prejudice.[1] The derivative plaintiffs acknowledge that many of the misstatements alleged in their complaints had already been dismissed by this Court in the Securities Class Action. Moreover, a number of additional obstacles are unique to the Derivative Actions. To begin, as other courts have commented, it is generally difficult to prevail in a derivative suit. More specifically, the derivative plaintiffs here would face significant difficulty with respect to providing demand futility – an issue that would arise in both motion practice and at trial. The derivative plaintiffs also acknowledge the potential challenge of proving bad faith by a preponderance of the evidence. The "powerful presumption" created by the business judgment rule would pose an additional hurdle to the derivative plaintiffs' fiduciary duty claims. *Id.* In this case, the business judgment rule, would have been "even harder to rebut" due to the "exceedingly complex matters of regulatory law" at issue. *Id.* Furthermore, there is an exculpatory clause in Oclaro's Certificate of Incorporation that may have prevented a finding of liability. Finally, even if the derivative plaintiffs could overcome the challenges with respect to liability, they acknowledge that proving damages, as opposed to showing

---

[1] The Securities Class Action plaintiffs discussed this issue as well in connection with their motion for final approval of settlement. *See Westley* Docket No. 191 at 12.

losses, also presented a significant obstacle. In light of these risks, the relatively modest results achieved represent a fair, reasonable, and adequate settlement.

B.     Fees

With respect to attorney's fees, the background rule is the "American Rule," under which "plaintiffs generally cannot recover attorneys' and accountants' fees as an element of costs." *Lewis v. Chiles,* 719 F.2d 1044, 1049 (9th Cir. 1983). Courts depart from the American Rule in shareholder derivative actions where it would be unfair to allow shareholders to benefit from an individual's suit on behalf of a corporation without contributing to the expense of bringing suit. *See id.* Even where a benefit is not "pecuniary in nature" a corporation may receive a "substantial benefit" from the prosecution of a derivative suit that justifies an award of attorney's fees. *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 396 (1970). Where "corporate therapeutics" confer a substantial benefit to all shareholders "[t]o award attorneys' fees . . . is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." *Id.* at 396-397.

Irrespective of a court's methodology, the touchstone for a fee award is that it must be reasonable. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1296 (9th Cir. 1994) ("[T]he district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances." (citation omitted)). Where there is no fee agreement, reasonableness is based upon results achieved in light of the efforts of counsel. *In re Oracle Sec. Litig.,* 852 F. Supp. 1437, 1450 (N.D. Cal. 1994).

C.     Substantial Benefit

"Where a corporation's actions vitiating a derivative suit have a legitimate business purpose, there is no basis for requiring that the shareholders bear a proportion of a plaintiff's costs if the suit has not yielded a benefit to the corporation." *Chiles,* 719 F.2d at 1049. In order to establish entitlement to compensation, Derivative Counsel must show that the derivative suit created a substantial benefit to Oclaro. *In re Oracle Sec. Litig.,* 852 F. Supp. at 1445. Cosmetic or ephemeral benefits are not substantial enough to justify a fee award. *See Kaplan v. Rand,* 192 F.3d 60, 71-72 (2d Cir. 1999) (rejecting award of fees where "[f]ar from providing a remedy for clearly identified

4

past misconduct, the settlement in this case strives to provide therapeutic 'benefits' that can only be characterized as illusory"). In the case at bar, the strength of the corporate governance measures appears exceedingly modest. One of the four corporate governance measures imposed requires the board to *continue* to comply with NASDAQ's requirements regarding the board's independence. As a general contracts principle, agreements to abide by existing legal duties are sometimes deemed illusory due to lack of consideration. *See* Restatement (Second) of Contracts § 73 (1981) ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; but a similar performance is consideration if it differs from what was required by the duty in a way which reflects more than a pretense of bargain."). Where the "reform" is "continued compliance," the substantiality of this benefit is particularly questionable.

Another of the four measures requires the positions of Chief Executive Officer and Chairman of the Board to be held by two different people. It is not clear, however, that the positions of chairman of the board and CEO were not already held by two different people when the parties finalized their settlement in February of 2014. Oclaro's 10-K shows that the CEO and chairman positions were held by two different people (Dougherty and Peterson) in September 2013 before the settlement was reached. If the positions of CEO and chairman of the board were already held by two different people, again the purported benefit conferred appears marginal. The other two reforms appear equally modest. There is no showing that limiting board members to five for-profit, public company boards effects any meaningful change from the status quo or responds to a real problem for Oclaro. Nor is there any showing that quarterly Audit Committee meetings are likely to prevent the kind of alleged wrongdoing in this case.

The marginal, if any, benefit from the four reforms contrasts with the situations in which there are substantive therapeutic changes from previous governance practices. *Cf. In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784 at *2-3 (awarding $8.85 million in fees and expenses where settlement included a cash payment of $14 million and reform expert estimated reforms could increase company's market value by more than "several hundred million dollars."); *Maher v. Zapata Corp.,* 714 F.2d 436, 454 (5th Cir. 1983) (connecting policy reform, new procedures, and other therapeutic changes to stock price more than tripling in less than two years).

Counsel has not shown that the institution and settlement of the derivative actions proximately caused some of their claimed benefit. Derivative Counsel takes credit for reforms that took place prior to settlement and that were not negotiated in connection with settlement. Derivative Counsel asserts that the Federal and State Actions "prompted Oclaro to implement additional important corporate governance reforms after the initiation of the Actions and prior to the Settlement." Motion at 10. For example, in the time since the filing of the derivative actions, there have been personnel changes and the Board has adopted bylaws that enhance the duties and powers of the Lead Director. *Id.* There has also been a revision of the Code of Conduct and Oclaro cut the base salaries for Board members and executive officers. *Id.*

Derivative Plaintiffs cite cases in which, where a corporate remedy follows the institution of suit, courts have applied a rebuttable presumption that the derivative action caused the benefit. Motion at 10. In those cases, however, the burden-shifting rule applied where the beneficial action mooted the derivative action by completely remedying the alleged wrong. *See In re Oracle Sec. Litig.,* 852 F. Supp. at 1447 (discussing, *inter alia, Allied Artists Pictures Corp. v. Baron,* 413 A.2d 876, 880 (Del. 1980)).[2] In this case, by contrast, the pre-settlement reforms did not provide the relief prayed for in the complaint or moot any of the claims. The causal link is less clear.

Causation matters, because "[w]here the corporation voluntarily undertakes a remedial act or change in corporate structure, which is not the proximate result of the action, plaintiffs are not entitled to attorneys' fees and expenses even though the act or change is significantly beneficial to the shareholders.*" Lewis v. Anderson,* 509 F. Supp. 232, 236 (C.D. Cal. 1981) *aff'd,* 692 F.2d 1267 (9th Cir. 1982). "Fees are denied in such situations even though it appears that but for the bringing of the action the corporation would never have undertaken to review its own practices and might never have made the beneficial act or change at all." *Id.* One of the public policy concerns that weighs against providing Derivative Counsel "a free ride" on the company's voluntary reform is that

---

[2] Alternatively, in cases where a reform is the proximate result of the derivative lawsuit among other causes, Delaware Courts have apportioned a smaller percentage of the benefit as an award. *See Franklin Balance Sheet Inv. Fund v. Crowley,* No. 888-VCP, 2007 WL 2495018 at *13 (Del. Ch. Aug. 30, 2007) (determining that counsel was entitled to a lower percentage rate of "5% of the excess benefit achieved" after finding lawsuit was one of the causes, "if not the primary cause" of a tender offer that achieved a common fund above damages sought).

an award of fees would "result in discouraging corporations from reviewing, on their own initiative, corporate structure and policy and thereafter taking remedial actions." *Id.* at 236. "[S]uch voluntary reviews and actions should be encouraged and not penalized." *Id.* The Federal Action's attorney declaration generally asserts that "Oclaro has acknowledged that the initiation and prosecution of the Actions were a contributing factor behind Oclaro's decision to implement important corporate governance reforms after the initiation of the Actions but prior to the Settlement." Docket No. 84 at ¶¶ 28-29. However, this hearsay testimony of a self-interested declarant fails to prove those reforms were a proximate result of their derivative lawsuits.

Even assuming, *arguendo,* that a rebuttable presumption applies, the record here may suffice to rebut the presumption where "other causative factors" such as "the class action and public scrutiny were more numerous and considerably more compelling" than a less-litigated derivative action. *In re Oracle Sec. Litig.,* 852 F. Supp. at 1447. In this case, an actively-litigated Securities Class Action led the derivative actions, which were stayed for years. It is far more likely that, if anything, the voluntary reforms were proximately caused by the actively litigated Securities Class Action rather than the stayed Federal Action.

D.  Lodestar

Derivative Counsel does not rely on the lodestar approach; they request less than their lodestar amount. *See In re Oracle Sec. Litig.,* 852 F. Supp. at 1450; *see also Lewis,* 509 F. Supp. at 240. Derivative Counsel appears to have calculated its fee request based on the settling parties' "respective valuations of the benefits to be conferred upon Oclaro." Motion at 20.

Instead, Derivative Counsel invokes the lodestar as a cross-check, arguing that the fee award is reasonable, because it results in a fractional lodestar multiplier of 0.63. *See* Motion at ¶ 61. A request for less than the lodestar calculation, a so-called "negative multiplier" can "quantify the amalgam" of otherwise difficult to value benefits and risks that inhere in a settlement at that moment in time. *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) ("No matter class counsel's expectations at the beginning of this case, at the current juncture, by agreeing to a negotiated fee that is but a fraction of prevailing market rates, counsel tacitly confirm that plaintiffs' case is not what they thought it once was."). A negative multiplier can reflect counsel's assessment

7

of the challenges of proceeding with litigation and therefore can support the reasonableness of both the settlement and the requested award. *Id.*

However, hours worked, as embodied in the lodestar, do not directly establish the reasonableness of a fee award. Courts recognize that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). The "critical factor" is not whether the lawsuit was reasonable to bring or tried with "devotion and skill;" the key is "the degree of success obtained." *Id.*

While the hard work of counsel is a "necessary condition" to obtaining attorney's fees, "it is never a sufficient condition." *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1182 (9th Cir. 2013). "Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results." *Id.* As discussed, *supra,* the result obtained in this case likely confers little, if any, benefit to the company: the results reflect extremely limited success. Derivative Counsel expended over 330 hours negotiating what resulted in four modest governance measures of questionable therapeutic value over the course of a one-day mediation and several follow-up discussions. *See* Docket Nos. 90-1; 90-2. The hours spent on mediation and settlement amount to over a third of the total hours worked by counsel. *Id.* At the hearing, counsel in the Federal Action made clear that, while the settlement terms "may appear to be modest," the derivative plaintiffs initially sought "a much more substantial and robust set of corporate governance terms." Hearing Tr. 10:12-11:3. Whatever was initially sought, in the end, counsel settled for terms that were "substantially less than what we were initially looking for." *Id.* In other words, while counsel may have spent many hours attempting to secure a better result over extended negotiations, those hours yielded limited, if any, success. The Court agrees that the record reflects vigorous arms-length negotiations, but the critical factor, *i.e.,* the result of those negotiations, compels a modest award commensurate with the modest result. *Cf. Ambat v. City & Cnty. of San Francisco,* 757 F.3d 1017, 1032 (9th Cir. 2014) (affirming award of $8,925 of the $127,447.26 fees requested based on district court's finding that only $8,925 in fees were earned on the causes of action that survived summary judgment); *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 945 n.8 (9th Cir. 2011) (observing that "the value of the

injunctive relief is not apparent to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury, nor from the progression of the settlement talks, the last of which occurred after defendants had already voluntarily added new warnings to their websites and product manuals."); *McCown v. City of Fontana,* 565 F.3d 1097, 1104 (9th Cir. 2009) ("[I]n judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should give primary consideration to the amount of damages awarded as compared to the amount sought." (citation omitted)).  In other words, the results obtained do not warrant 330 hours of negotiations.

## II.  CONCLUSION

In view of the significant risks with proceeding with litigation, the Court finds the settlement to be fair, adequate, and reasonable despite its meager value.  The accompanying order approving settlement memorializes this conclusion.  With respect to fees, the Court is mindful of the salutary effects of encouraging parties to arrive at a negotiated resolution.  Here, the parties negotiated at arms-length and were aided and advised by a skilled mediator.  Additionally, no shareholder has objected to the request for attorney's fees.  Nevertheless, requiring a showing of substantial benefit along with careful consideration of the result obtained serve an important purpose:  rewarding Derivative Counsel where the derivative litigation actually makes the company better off.  *See Zucker v. Westinghouse Elec.* Corp., 265 F.3d 171, 176-77 (3d Cir. 2001).

Nevertheless, in light of the dearth of evidence of a causal link between Derivative Counsel's efforts and the pre-settlement corporate governance measures, the Court finds that Derivative Counsel has overstated the benefits that accrued to the company as a proximate cause of the derivative litigation.  It follows that Derivative Counsel's share of this benefit allegedly conferred on Oclaro, as reflected in the amount requested as a fee award, is also overstated.  Consistent with *Hensley*, in light of the limited success attained, the Court will reduce the fee award to $150,000.  This represents 367 hours of attorney time at the average rate of $409 per hour.[3]  This number of

---

[3] Johnson & Weaver has submitted a lodestar reflecting a blended rate of $414 per hour (Docket No. 90-1); Robbins Arroyo has submitted a lodestar reflecting a blended rate of $404 per hour (Docket No. 90-2).

hours and total fee award better reflects the amount of fees that reasonably would have been incurred in (1) investigating and filing a complaint which essentially piggybacked on the Securities Class Actions, and (2) settling the cases on modest terms which yield little, if any, proven benefit to Oclaro.

This order disposes of Docket No. 83.

IT IS SO ORDERED.

Dated: September 19, 2014

_____
EDWARD M. CHEN
United States District Judge